INHABITANTS OF VEAZIE *versus* GIDEON MAYO & als.

Although the statute of 1853, c. 41, regulating the mode in which a railroad shall cross streets and ways, is a general and remedial statute, passed by the Legislature in the exercise of the power of police, and applies to all corporations existing at the time, as well as those subsequently created; still, it cannot be construed as requiring railroads already constructed, or whose location has been completed and duly filed, and the construction commenced under a binding contract, to locate anew in order to comply with its provisions.

In such a case, the provision making a railroad which has not conformed to the statute, in crossing a street or way, a nuisance, and holding the directors of the company personally liable, does not apply.

ON REPORT of the facts by APPLETON, J.

THIS was an action of the CASE against the defendants, as directors of the Penobscot Railroad Company, under the statute of 1853, c. 41, § 3.

Whilst the Penobscot Railroad Company was constructing its road across a street in the town of Veazie, one John Phillips was injured by falling into the cut, whilst travelling along said street, in the evening. He brought his action against the town, and recovered damages and costs. The present suit was instituted by the town against the defendants, as being personally liable under the statute, for the damages paid to Phillips, and other damages. The facts are the same as in the case reported in this volume, *Veazie* v. *Penobscot Railroad Company;* see page 119.

*A. G. Wakefield*, for the plaintiff.

*N. Wilson*, for the defendants.

The opinion of the Court was drawn up by

TENNEY, C. J.—The statute of 1853, c. 41, § 3, provides, that "no railroad shall be located across any county road, until the place, manner and conditions of such crossing shall have been ordered and determined in writing by the County Commissioners, and recorded in the County Com-

missioners' office." "And no railroad shall cross any street of a city, nor a county road, without the written assent of the mayor and aldermen of the city, which written assent shall determine and state the manner and conditions upon which such crossing may be made, and shall be recorded in the County Commissioners' office. And every such crossing, made contrary to the foregoing provisions, shall be considered a nuisance, and liable to all the provisions of law relating to nuisances, and the directors of the company making the same shall be personally liable therefor."

Under the provisions referred to, the plaintiffs claim to recover of the defendants, as damages, the amount of a judgment, rendered in favor of one Phillips against the plaintiffs, for an injury caused by a cut across a highway, at a time when the defendants were directors of the Penobscot Railroad Company, in the town of Veazie, made for that railroad. The railroad was located by the County Commissioners, in 1852, prior to the passage of the Act invoked in support of this action, and the provisions of that Act, it is not insisted by the defendants, were afterwards conformed to by the company.

The plaintiffs having offered to prove the making of the cut, as alleged in the writ, by the railroad company while the defendants were its directors, without compliance with the requirements stated, so far as the crossing of the highway was concerned, and that the allegations in the writ of Phillips against the plaintiffs, were true, that the work on that section of the road was not commenced till after the Act of 1853, c. 41, was in force, although work had been done on other parts of the railroad, before the Act went into operation, a nonsuit was directed.

It appears, that before the passage of the Act invoked in support of this action, a contract had been made between the railroad company and Hezekiah C. Seymour, for the construction of the railroad, including the part where the cut in question was made, by one Nash, who was a sub-contractor under Seymour.

Although the statute of 1853, c. 41, is to be treated as a general law and a remedial statute ; and the passage thereof is to be regarded as the exercise of a power of police, which must of necessity exist in the people ; and this law is to be applied, so far as it can be done with propriety and consistently with its terms, to all corporations embraced in its provisions, whether existing at the time or coming into existence afterwards, still it cannot be construed as creating the obligation in railroads, which have been located, to locate anew, so as to conform to these provisions. The language of the Act being prospective, it could not have been designed to refer to the railroads last mentioned, and such interpretation is not insisted on by the plaintiffs. Neither can the Act apply with propriety to a railroad, where the location has been completed and duly filed in the office of the County Commissioners., and the construction of the road actually commenced, under a binding contract between the corporation and the party who is to make the railroad. The time for a change of location, at the crossings over such road or street, may have been so far exhausted that the necessary delay to make such change, according to the statute of 1853, may work a forfeiture of the charter. And a contract for construction is of binding obligation, so that neither party, nor the Legislature, can impair it.

In the opinion in this case, 45 Maine, 560, when it was before the Court, it is implied that the statute of 1853 will not apply to railroad corporations chartered before its enactment, where they had entered upon the construction of the road under prior existing laws. This doctrine is correct, and, if the case required, it might be extended to roads previously chartered, when the location had been completed, and a binding contract made for its construction.

*Nonsuit to stand.*

RICE, APPLETON, CUTTING, MAY and KENT, JJ., concurred.